NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 28 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    16-10000 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 2:14-cr-00262-JCM-GWF-1 |
| PATRICK LYNN WASHINGTON, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted April 21, 2017
San Francisco, California

Before:  THOMAS, Chief Judge, MURGUIA, Circuit Judge, and BAYLSON,[**] District Judge.

Appellant Patrick Lynn Washington pled guilty to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), after the district court denied his motion to suppress two firearms

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Michael M. Baylson, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

discovered in the course of a warrantless search of his home. During Washington's change-of-plea colloquy, the district court informed him that he retained his right to appeal the motion's denial, and he does so here.

We review the district court's decision to deny a motion to suppress, and whether the exclusionary rule applies to a given case, *de novo*. United States v. Perea-Rey, 680 F.3d 1179, 1183 (9th Cir. 2012) (quoting United States v. Crawford, 372 F.3d 1048, 1053 (9th Cir. 2004) (en banc)). We review the underlying factual findings for clear error. Id. The clearly erroneous standard requires a "significantly deferential" review and will only result in reversal when the reviewing court has "a definite and firm conviction that a mistake has been committed." United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003) (quoting United States v. Maldonado, 215 F.3d 1046, 1050 (9th Cir. 2000)). Even if we determine that the grounds on which the district court denied Washington's motion are incorrect, we may affirm the motion's denial if we find another permissible basis for doing so. See United States v. Washington, 641 F.2d 1368, 1371 (9th Cir. 1981).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Because "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion" stands at

2

the core of the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586, 590 (1980) (quoting Silverman v. United States, 365 U.S. 505, 511 (1961)). The exclusionary rule "make[s] effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person" by forbidding "evidence seized during an unlawful search . . . [to] constitute proof against the victim of the search." Wong Sung v. United States, 371 U.S. 471, 484 (1963) (first citing Boyd v. United States, 116 U.S. 616 (1886), then citing Weeks v. United States, 232 U.S. 383 (1914)).

This case stems from a July 5, 2014 encounter between Washington and various officers of the Las Vegas Metropolitan Police Department. On that day, Washington's wife called 911 and stated that Washington was holding her and her child against their will, that she feared for her life, and that Washington had two firearms in his possession. Officers Justin Spurling and Traves Humpherys responded to the call and arrived at Washington's apartment, where they kicked in the door, arrested Washington, and took him into custody. Officer Humpherys patted Washington down and discovered four bullets in his pocket. Simultaneously, Officer Spurling conducted a protective sweep of the apartment, including the patio area where there was a set of four stacked tires. He shined his flashlight into the tires and discovered two firearms hidden in the stack. At some

3

point throughout this chain of events, the officers learned that Washington was a felon. Following discovery of the firearms, the officers "froze the premises" and requested their sergeant to send detectives from the Firearms Investigation Unit ("FIU") to the scene. FIU Detectives Lawrence Rinetti and Breck Hodson arrived at the residence and Detective Rinetti applied for and received a telephonic search warrant to search the residence for firearms, citing in the warrant application the details of the 911 call, the fact that Washington was a felon, the ammunition discovered in Washington's pocket, and the firearms found in the tire stack.

It is undisputed that the two firearms at issue were seized during a warrantless search of Washington's home, and that they were not discovered pursuant to a lawful protective sweep. Therefore, they are the product of a presumptively unreasonable search and must be suppressed unless an exception to the exclusionary rule applies. Because we find that the independent source doctrine applies to the discovery of the firearms, we affirm the district court's denial of Washington's motion to suppress.

The independent source doctrine permits the admission of evidence obtained via an illegal search where "the challenged evidence has an independent source." Nix v. Williams, 467 U.S. 431, 443 (1984). The exception represents an effort to balance society's interest "in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime." Id. It

4

endeavors to place the police in the same position that they would have been in had no illegal behavior occurred. Id. To apply the doctrine in the context of a warrant issued based on illegally obtained information, the court must ask: (1) whether there was probable cause without the tainted evidence, and (2) whether the officers would have sought a warrant without having seen the tainted evidence. United States v. Duran-Orozco, 192 F.3d 1277, 1281 (9th Cir. 1999).

In this case, the magistrate judge and the district court properly found that probable cause existed to search Washington's residence even if the firearms had not been seized. If we excise the tainted evidence from the warrant application, the following facts still support the warrant's issuance: (1) the 911 call in which Washington's wife stated she was being held against her will by Washington and that he was threatening her with two firearms; (2) Washington's status as a felon; and (3) Washington's possession of four bullets, discovered during Officer Humpherys' lawful pat down, incident to arrest. This would have been sufficient evidence on which to obtain the warrant to search Washington's residence for firearms.

Washington's main argument on appeal is that the magistrate judge, whose Findings and Recommendations were adopted by the district court in full, made an improper inferential leap by concluding that the firearms detectives who sought the warrant would have come to Washington's residence had the police officers not

5

discovered the guns. He contends that there is a missing link in the evidence because, although the officers testified that they would still have contacted their sergeant to request firearms detectives to come to the home regardless of the guns' seizure, there was no proof that the sergeant would have heeded that request in this alternate scenario. Therefore, according to Washington, the government failed to show that the detectives would have been present on the scene and able to request a warrant absent the guns' discovery.

Contrary to Washington's arguments, the magistrate judge's and the district court's finding on this factual issue was not clearly erroneous. The magistrate judge credited the officers' testimony that "they would have still contacted their superiors and requested that detectives respond to the scene to investigate and possibly seek a search warrant for firearms." He further credited the detectives' testimony that "absent the information that firearms had been discovered in the apartment, they would have still gone to the apartment and would have applied for a warrant to search the apartment for firearms." The magistrate judge's failure to specifically state that the "superiors" would have heeded the officers' request to send detectives to the scene does not suffice to render his factual findings clearly erroneous. Indeed, the magistrate judge engaged in a lengthy and well-reasoned analysis in which he concluded that, notwithstanding the "self-serving" nature of

the officers' and detectives' testimony, the testimony was credible and compelled a finding that a warrant would have been sought regardless of the guns' discovery.

Due to the highly deferential nature of the clearly erroneous standard, which we apply to findings of fact out of a recognition that the court hearing live testimony "is in a superior position 'to judge the accuracy of witnesses' recollections and make credibility determinations,'" we affirm the district court's denial of Washington's motion to suppress. United States v. Lang, 149 F.3d 1044, 1046 (9th Cir. 1998) (quoting United States v. McConney, 728 F.2d 1195, 1201 (9th Cir. 1984) (en banc)).

**AFFIRMED.**